UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

REINFORCED CONCRETE & MASONRY
CONSTRUCTION, INC. d/b/a BROAD
CONSTRUCTION,

               Plaintiff,

   - against -

HUDSON INSURANCE COMPANY,

          Defendant.

------------------------------------------------------ X

**OPINION AND ORDER**

**14-cv-1705 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On March 12, 2014, Broad Construction ("Broad") filed suit against

Hudson Insurance Co. ("Hudson"), surety of N.J.D. Wiring & Electric ("NJD").

After entering into an agreement with the Metropolitan Transit Authority ("MTA")

to refurbish the Eastchester Bus Depot (the "Project"), NJD subcontracted a

portion of the work to Broad.[1] Here, Broad seeks to recover against Hudson for

payment that Broad believes it is owed in connection with work performed under

---

[1]     *See* Complaint and Prayer for Relief, ¶¶ 1-2.

the subcontract.[2]

On November 17, 2014, NJD moved to intervene, on the grounds that

MTA — a non-party — recently indicated that its understanding of the primary

contract (between MTA and NJD) has changed, in a way that exposes NJD to

potential liability in connection with the present lawsuit.  For the reasons set forth

below, I find that NJD must be permitted to participate in this litigation.  However,

because NJD's intervention would defeat complete diversity among the parties,

thereby extinguishing this Court's subject matter jurisdiction under section 1332,

the case is dismissed without prejudice — leaving the parties free to continue this

litigation in state court.

## II.    BACKGROUND

The work that NJD agreed to perform for MTA consists of two

component parts:  (1) the primary contract, and (2) various "additional work

orders" — *i.e.*, addenda to the primary contract, providing for further work (and

more funding) in response to new contingencies.  On October 8, 2014, MTA

notified NJD that one such order, Change Order No. 2, was "under review by . . .

the Project's architect, who believed that the work called for under [the Order] was

_____

[2]       *See id.* ¶¶ 10-20.

within the scope of [the primary contract]."[3]  If so, Change Order No. 2 would be rescinded — because the work it contemplated in fact overlapped with the primary contract — and the additional compensation provided in Change Order No. 2 (to be paid by MTA to NJD) would be unwound, yielding less overall compensation for NJD.  On October 20, 2014, the rescission of Change Order No. 2 was confirmed.[4]

NJD disputes the MTA's rescission of Change Order No. 2 and — according to its representations — plans to litigate the issue in due course.[5]  The reason the decision is relevant to the instant dispute is that Broad has already been compensated (by NJD via Hudson) for the work described in Change Order No. 2, and in light of the MTA's change of heart, NJD would like an opportunity to assert counterclaims seeking a refund of that compensation.  Indeed, NJD maintains that if it is not given such an opportunity, it faces a risk of inconsistent verdicts.[6]

The problem, in essence, is that both the dispute between Broad and

---

[3]     11/04/14 Affidavit of Stavros Karageorgiou, Operations Manager of NJD, in Support of NJD's Motion for Intervention, ¶ 20.

[4]     *See id.* ¶ 21.

[5]     *See* Non-Party NJD's Memorandum in Support of Its Motion for Intervention ("NJD Mem."), at 4 ("Whether MTA has the right to rescind a change order previously approved will be the subject of future litigation.").

[6]     *See id.* at 5-7. *See also* 10/31/14 Transcript of Conference ("10/31/14 Transcript").

Hudson *and* the (imminent) dispute between NJD and MTA require a fact-finder to assess the scope of the Project — specifically, whether Change Order No. 2 was, as the MTA now believes, duplicative of the primary contract's terms. In NJD's view, dividing the controversy between two separate lawsuits makes it possible that (1) this Court will find that Change Order No. 2 was beyond the original scope of the Project (and therefore that Broad's compensation was proper), but that (2) another court down the line will find that Change Order No. 2 was *within* the original scope of the Project (and therefore that the MTA can recover monies paid to NJD). If that came to pass, NJD argues that it would be "[left] [] with . . . a liability which would otherwise have been a contractual 'pass through.'"[7] In other words, due to inconsistent findings of fact, NJD would be forced to return money to the MTA but, simultaneously, to pay the same sum to Broad.

## III.   APPLICABLE LAW

### A.   Intervention

Under Rule 24, "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

---

[7]     10/21/14 Letter from Gregory A. Tsonis, Counsel for NJD, to the Court, at 2.

impair or impede the movant's ability to protect its interest."[8]  The Second Circuit

has held that this Rule creates a four-factor test.  The intervenor must "(1) timely

file an application, (2) show an interest in the action, (3) demonstrate that the

interest may be impaired by the disposition of the action, and (4) show that the

interest is not protected adequately by the parties to the action."[9]  The Second

Circuit has also "underscored that a '[f]ailure to satisfy any one of these four

requirements is a sufficient ground to deny [a motion to intervene].'"[10]

### B.    No Supplemental Jurisdiction Over Diversity-Based Suits

Section 1367(a) provides that "in any civil action of which the district

courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy."[11]

Section 1367(b), however, provides an important caveat.  "In any civil action of

which the district courts have original jurisdiction founded solely on section 1332"

---

[8]      Fed. R. Civ. P. 24(a)(2).

[9]      *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014)
(internal citations omitted).

[10]     *Id.* (quoting *"R" Best Produce, Inc. v. Shulman–Rabin Mktg.*, 467 F.3d
238, 241 (2d Cir. 2006)).

[11]     28 U.S.C. § 1367(a).

— that is, jurisdiction stemming from the parties' diversity[12] — "the district courts shall *not* have supplemental jurisdiction under subsection (a) over claims . . . by persons . . . seeking to intervene as plaintiffs under Rule 24, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."[13]

## IV. DISCUSSION

### A. NJD Has the Right to Intervene

NJD plainly has an interest in this action, and — in light of MTA's recent reinterpretation of the primary contract terms — NJD's motion to intervene was timely.[14] Furthermore, even if Hudson can adequately represent NJD's interests vis-a-vis Broad — and it is unclear whether that is so[15] — Hudson cannot represent NJD's *full* interests, because the meaning of Change Order No. 2 bears not only on the dispute between NJD and Broad, but also on the dispute between

---

[12]     *See id.* § 1332.

[13]     *Id.* § 1367(b).

[14]     In its papers, Broad makes numerous references to NJD's "delay." *See, e.g.*, Memorandum in Opposition to NJD's Motion to Intervene ("Opp. Mem."), at 1 (calling the motion an "eleventh hour" tactic). Notably, however, Broad has made no attempt to argue that NJD's motion — however close in time to the scheduled trial date — is untimely in the formal sense contemplated by the Federal Rules and the case law.

[15]     *See* NJD Mem. at 7 (arguing that Hudson cannot adequately represent NJD's interests because it "cannot raise NJD's affirmative claims against Broad").

NJD and MTA.  Therefore, NJD's legal interests "[are] not protected adequately by [other] parties to the action."[16]

The outstanding question, then, is whether the present dispute actually *threatens* NJD's legal interests.  It is one thing for a non-party to be "interested" in a litigation in the sense of preferring one outcome over another.  It is another thing for a non-party to demonstrate that a litigation potentially imperils its legal rights.  Indeed, in other breach of contract suits between subcontractors and sureties, courts in this District have held that principals (like NJD) typically do *not* have the right to intervene, because they retain claims against both parties — the subcontractor and the surety — regardless of the suit's outcome.[17]  Even if a principal is generally "interested" in the suit, courts have held that the principal's legal *interests* are not threatened.  In Broad's view, the same logic applies here — as a principal, NJD has rights against Broad and Hudson under state law, and no

---

[16]     *Floyd*, 770 F.3d at 1057.

[17]     *See, e.g.*, *Siteworks Contr. Corp. v. West Sur. Co.*, 461 F. Supp. 2d 205, 209-10 (S.D.N.Y. 2006) (holding that, in a suit between a subcontractor and a surety, the principal was "not subject to any direct liability . . . as a consequence of the [subcontractor's] claims," and that the principal retained rights under "separate agreement[s] not [presently] before the court"); *William A. Gross Const. Assoc. v. American Mfr. Mut. Ins. Co.*, No. 07 Civ. 10639, 2009 WL 427280, at *13 (S.D.N.Y. Feb. 23, 2009) (explaining that "suits . . . in which a surety but not the principal is sued by an alleged creditor, are common and permissible under New York law," and that such suits typically do not require the principal's participation) (internal citations omitted).

intervention is necessary to vindicate those rights.

The trouble with this argument is that NJD is not only concerned about its legal position vis-a-vis Broad and Hudson. It is *also* concerned about its legal position vis-a-vis MTA. Broad tries to defuse NJD's fear by emphasizing — correctly — that if Broad prevails here, and NJD believes that result to be unjust, it is free to bring state law claims against Broad in the future.[18] This, however, gives short shrift to NJD's actual concern. The potential for "inconsistency" does not stem from NJD's inability to bring suit against Broad (and/or Hudson). Rather, it stems from the possibility of NJD *losing* a suit against MTA. What NJD fears is that two mutually disadvantageous results will coincide. *First*, this Court will agree with Broad that Change Order No. 2 is beyond the scope of the primary contract (entitling Broad to collect from Hudson). *Second*, another court, down the line, will agree with MTA that Change Order No. 2 is *within* the scope of the primary contract (entitling MTA to clawback payments from NJD). If those contradictory holdings both come to pass, NJD argues that it will be left holding the bag.

I agree. Given the structure of the transaction underlying this dispute, it would do a disservice to NJD's role — as a pass-through — to make it bear the

---

[18]     *See* Opp. Mem. at 11-12.

risk of inconsistent fact-finding as to the relationship between the primary contract

and Change Order No. 2.[19]  NJD has a right to intervene.

### B. Because NJD's Intervention Would Destroy the Parties' Diversity, the Case Must Be Dismissed

Section 1367 is clear:  supplemental jurisdiction does not extend to

disputes between non-diverse parties when federal jurisdiction is based on

diversity of citizenship.  Thus, NJD's motion creates an irreconcilable conflict

between section 1367 and Rule 24.[20]  The question is which way the conflict

---

[19]      In the alternative, Broad argues that even if the present dispute poses a risk of "inconsistency," NJD has only alleged the possibility of inconsistent legal *results*, not inconsistent legal *obligations* — and it is only the latter that requires intervention. *See* Opp. Mem. at 12. *See also Travelers Indem. Co. of Conn. v. Losco Grp.*, 150 F. Supp. 556, 564-65 (S.D.N.Y. 2001).  This argument confuses the requirements of necessary joinder under Rule 19 with those of intervention by right under Rule 24.  In *Losco* — the case on which Broad relies — the issue was whether a defendant should be allowed to hale a non-party into court, *not* whether a non-party should be allowed to intervene.  Although the defendant's concern in *Losco* was functionally similar to NJD's concern — there, as here, the fear was that parallel proceedings would give rise to contradictory verdicts — the policy considerations behind the Rules are entirely distinct.  It is little surprise that joinder under Rule 19(a) requires an extraordinary showing of need, because it often involves compelling a party with "no interest in [the] proceedings" to appear in court. *Id.* at 565.  Whereas Rule 24 is about vindicating the rights of non-parties, Rule 19 actively *encroaches on* the rights of non-parties (sometimes, with good reason).  It only makes sense that the two would be governed by different standards, and that the former is more permissive.

[20]      NJD points out that the limitation on supplemental jurisdiction under section 1367 is limited to claims "by persons . . . seeking to intervene *as plaintiffs* under Rule 24." 28 U.S.C. § 1367(b) (emphasis added).  The jurisdictional bar is therefore inapplicable, NJD argues, because it is trying to intervene as a *defendant*,

should be resolved — in favor of this Court retaining jurisdiction, or in favor of NJD participating in the litigation.

Faced with this problem, Broad argues in favor of this Court retaining jurisdiction. But in light of the existence of an alternate forum that *can* include NJD — state court — Broad's proposal makes little sense. If brought today, this lawsuit should involve at least three parties — and, once MTA is included, probably four. Because the dispute about the scope of the primary contract in relation to Change Order No. 2 bears on multiple parties' legal interests, it should be litigated (or settled) jointly. That it cannot be so litigated in federal court is no reason to ignore the dispute's practical implications. It is a reason for the parties to

---

not a plaintiff — and even if NJD intends to bring counter-claims (which could be said to make it a "third-party plaintiff"), the purpose of section 1367's limitation is to "prevent original plaintiffs — but not defendants or third parties — from circumventing the requirements of diversity . . . [by] smuggl[ing] in claims that the *plaintiff* would not otherwise be able to interpose." *Viacom Intern. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000) (emphasis in original). In this case, however, NJD not only has counterclaims against Broad; it also has potential affirmative claims against MTA, a non-party that NJD is likely to join to the suit (or *attempt* to join to the suit) soon after intervening. *See* 10/31/14 Transcript, at 6 (where counsel for NJD indicates that NJD "[seeks] to intervene [in the present suit] *and to bring an action against MTA*") (emphasis added). In light of that reality, it is not clear which way the limitations of section 1367 cut. What *is* clear, however, is that general principles of jurisdiction tilt in favor of fewer exercises of federal jurisdiction, not more. *See Siteworks*, 461 F. Supp. 2d at 207-08 (it is "axiomatic that the federal courts are courts of limited jurisdiction"); 28 U.S.C. § 1367(c) (establishing that even when supplemental jurisdiction is proper under section 1367(a)-(b), federal courts may decline to exercise such jurisdiction for a wide variety of reasons, both structural and case-specific).

adjudicate the dispute elsewhere.

In sum, I conclude that NJD has a right to intervene in this action. But NJD's intervention also deprives this Court of subject matter jurisdiction, precluding its further involvement in the case. Accordingly, for intervention to proceed — as both the criteria set forth in Rule 24(a) and basic principles of fairness demand — the dispute must be pursued in state court, where all the parties may be joined in a single lawsuit.[21]

## V.    CONCLUSION

For the foregoing reasons, NJD's motion is GRANTED, and the case is dismissed without prejudice. The Clerk of Court is directed (1) to close Dkt. Nos. 13, 15, and 21, and (2) to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 8, 2014

---

[21]      *Cf. Boise Cascade Corp. v. Wheeler*, 419 F. Supp. 98, 103 (S.D.N.Y. 1976) ("Since [the intervenor] cannot be joined as a party plaintiff without ousting the court of jurisdiction, we must determine whether 'in equity and good conscience the action should proceed.' After due consideration of all relevant circumstances, we conclude that it should not.") (citing Fed. R. Civ. P. 19(b)).

- Appearances -

**For Plaintiff:**

Manny A. Frade, Esq.
Mastropietro-Frade, LLC
The Chancery, 190 Willis Avenue
Mineola, NY 11501
(516) 279-6699

**For Defendant Hudson and Non-Party NJD:**

Gregory Aris Tsonis, Esq.
Milber, Makris, Plousadis & Seiden, LLP
1000 Woodbury Road, Ste. 402
Woodbury, NY 11797
(516) 712-4000